UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHANNON DESCHENES )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>OFFICER ANDREW RYDER, SERGEANT )<br>FRANCISCO RODRIQUES, and THE CITY )<br>OF NEW BEDFORD )<br>    Defendants. )<br>) | **COMPLAINT**<br><br>Docket no. 1:16-CV-11460 |

## INTRODUCTION

1. This is an action for money damages for violations of the Plaintiff's constitutional rights brought pursuant to 42 U.S.C. § 1983 and related state law. Plaintiff Shannon Deschenes alleges that the Defendant police officers used excessive force against him in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I. Defendant officers tasered and pepper-sprayed Plaintiff several times without warning or justification, and Defendant Ryder intentionally struck Plaintiff in the head with a flashlight. This blow caused Plaintiff a severe concussion and a several-inch-long laceration on his head which required staples and stitches to close, and resulted in muscle fiber death. Defendant officers also beat Plaintiff when he was on the ground unconscious.

2. Plaintiff further alleges that the City of New Bedford has demonstrated a custom and policy of deliberate indifference to the constitutional rights of its citizens by failing to properly investigate, supervise, and discipline officers known to use unreasonable force. This custom created an environment of impunity which was the moving force behind the violation of Plaintiff's rights.

1

## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain related claims arising under state law.

## PARTIES

4. At all times relevant to this action, Plaintiff Shannon Deschenes was a resident of New Bedford, Massachusetts.

5. Defendant Officer Ryder is a police officer for the New Bedford Police Department, acting under color of law at all times relevant to this Complaint, and is sued in his individual capacity as a police officer for the City of New Bedford.

6. Defendant Sergeant Rodriques is a police officer for the New Bedford Police Department, acting under color of law at all times relevant to this Complaint, and is sued in his individual capacity as a police officer for the City of New Bedford.

7. Defendant City of New Bedford is a municipality duly authorized under the laws of the Commonwealth of Massachusetts.

## FACTS

8. On or about August 3, 2013, Plaintiff Shannon Deschenes was attending the Feast of the Blessed Sacrament on Madeira Ave, New Bedford, MA (hereinafter "the feast") with his girlfriend and friend.

9. After leaving the feast, the trio walked to Plaintiff's truck, which was parked a few blocks away near the corner of Tinkham Street and Acushnet Avenue in New Bedford.

10. Upon arriving at the truck, the group realized that multiple police cruisers were blocking the them from being able to leave. As a result, they began to walk around the corner towards Dublin's Sports Bar and Grille ("Dublin's").

11. At this time, Plaintiff observed a police officer whom he knew.  He informed him that his truck was blocked in by their cruisers. The officer told him that they were clearing the area, and that the three of them should wait in the parking lot of Dublin's so that they did not get caught up in the sweep.

12. In an effort to comply with the officer's request, the three waited in the parking lot of Dublin's. At this point, another male and female were standing with the trio. Roughly five minutes later, Defendants Rodriques and Ryder approached the group and began screaming at them to leave the area.

13. Plaintiff informed Defendant Rodriques that the other officers had told them to wait in the parking lot, yet Defendant Rodriques continued yelling at the group, exclaiming that he did not care what the other officers told them and that they needed to leave.

14. Plaintiff once again informed Defendant Rodriques that they could not leave because his truck was blocked in by the police cruisers. Defendant Rodriques again screamed at the group to leave the area.

15. In an effort to comply with Defendant Rodriques' command, the trio began to walk away. The other male and female separated from the trio. While walking away, Plaintiff was complained to his girlfriend that he did not understand how the officers expected them to leave as his truck was blocked in.

16. The group reached the end of the parking lot and turned onto Tinkham Street.  Plaintiff suddenly noticed that Defendants Rodriques and Ryder were right behind them.

17. Defendant Rodriques then ran up to Plaintiff, bumped him with his chest and yelled: "I told you to leave!" Plaintiff once again repeated that it was not possible for him to leave, and Defendant Rodriques grabbed Plaintiff's arm and yelled at him that he was under arrest.

18. At this time, Plaintiff pulled his arm away from Defendant Rodriques. Immediately thereafter, Defendant Ryder removed his Electronic Control Weapon ("taser") and shot Plaintiff in the chest without warning or justification.

19. Fearing for his life given the officers unpredicted and inexplicably violent behavior, Plaintiff removed the prongs from his chest and attempted to run. However, at this point New Bedford Police Department Officer Jarrod Gracia - who had been walking out of the parking lot of Dublin's when he noticed the disturbance - joined the Defendant officers. Officer Gracia then also shot Plaintiff with his taser. Immediately afterward, one of the Defendant officers once again shot Plaintiff with his taser.

20. As Plaintiff slowed, Defendant Rodriques sprayed Plaintiff in the face with his pepper-spray. Defendant Ryder removed his flashlight and intentionally struck Plaintiff directly in the head. The force of this blow caused Plaintiff to immediately lose consciousness and fall to the ground.

21. After Plaintiff was on the ground completely unconscious, Defendant Rodriques once again sprayed Plaintiff in the face with his pepper-spray. The officers then jumped on top of Plaintiff and began to brutally beat Plaintiff with closed fist punches and full-force kicks. One of the Defendants then attempted to taser Plaintiff again, but was ordered to stand down by one of the officers on the scene. Plaintiff was then handcuffed and EMTs were called.

22. Upon regaining consciousness, Plaintiff was in excruciating pain and could not breathe. His face was dripping with blood. Plaintiff has no recollection of being struck with the flashlight as a result of the severe trauma which rendered him unconscious.

23. After being taken to St. Luke's Hospital with at least one taser prong still stuck in his body, Defendant officers failed to inform the doctors that Plaintiff's head laceration was caused by

a blow to the head with a flashlight. Instead, they permitted the doctors to believe that it was caused by him falling and striking his head on the ground after being shot with a taser.

24. As a result of the Defendants' actions, Plaintiff was hospitalized for four days. Defendant Ryder's blow to Plaintiff's head rendered him severely concussed, caused a deep laceration two and a half to three inches long which required staples and stitches to close, and resulted in permanent and severe scarring on Plaintiff's head. The blow also caused a hematoma to form. Plaintiff was also diagnosed with rhabdomyolysis, which is a serious condition that occurs when muscle fibers die as a result of trauma, causing their contents to be released into the bloodstream. He also received multiple abrasions and a black eye.

25. While at the hospital, Plaintiff was extraordinarily nauseous with extreme abdominal pain, causing him to vomit at least twenty times. For a period of time at the hospital, he would vomit whenever he moved his head.

26. At some point while at the hospital, Defendant Ryder approached Plaintiff and informed him that he was the one who struck him in the head with his flashlight. He added that he knew Plaintiff and that he regretted not realizing this before he struck him, because had he realized that it was Plaintiff, he never would have struck him with the flashlight.

27. Plaintiff experienced severe emotional distress as a result of this incident including fear of the police, trouble sleeping, and persistent anxiety. Plaintiff has also been referred to a neurologist due to ongoing severe headaches and memory problems after the incident.

28. Defendant Rodriques has faced numerous citizen complaints, including at least five complaints for excessive force as of June 11, 2014. The investigations into these complaints have not been thorough. Despite the evidence offered by complainants, Rodriques was not

found responsible for any of these acts of excessive force. He has never been disciplined for excessive force despite the number of complaints and their severity.

29. The failure to properly investigate, discipline, and supervise officers, including Defendant officers, has created a culture of impunity within the department. This culture is the moving force behind the violations of Plaintiff's civil rights.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1983
## BY ALL INDIVIDUAL DEFENDANTS

30. Plaintiff restates the allegations in paragraphs 1 through 29 and incorporates said paragraphs herein as paragraph 30.

31. By the actions described above in paragraphs 1 through 30, Defendants, acting under color of law, deprived Plaintiff of his right to be free from the use of excessive force, in violation of 42 U.S.C. § 1983 and his Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

## COUNT II
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT: M.G.L. c. 12, § 11I
## BY ALL INDIVIDUAL DEFENDANTS

32. Plaintiff restates the allegations in paragraphs 1 through 31 and incorporates said paragraphs herein as paragraph 32.

33. By the actions described above in paragraphs 1 through 32, Defendants violated Plaintiffs' civil rights through threats, intimidation, and coercion, in violation of M.G.L. c. 12, § 11I.

### COUNT III
### VIOLATION OF 42 U.S.C. § 1983
### BY DEFENDANT CITY OF NEW BEDFORD

34. Plaintiff restates the allegations in paragraphs 1 through 33 and incorporates said paragraphs herein as paragraph 34.

35. By the actions described above in paragraphs 1 through 34, the City of New Bedford has demonstrated a custom and policy of deliberate indifference to the rights of citizens by:

    a. Tolerating a custom and policy in which officers violate the constitutional rights of citizens through the use of unreasonable force;

    b. Failing to take disciplinary action against officers who violate the rights of citizens by using unreasonable force; and,

    c. Failing to adequately supervise officers and to and investigate officers who are prone to use unreasonable force;

    d. Failing to adequately train officers in the proper use of force.

36. These failures have created an atmosphere of impunity, where excessive force in understood to be tolerated, within the department which was the moving force behind the violations of Plaintiff's civil rights.

**WHEREFORE,** the Plaintiff requests that this Court award:

    1. Compensatory damages against all Defendants jointly and severally;

    2. Punitive damages against all Defendants;

    3. The costs of this action, including reasonable attorneys' fees; and,

    4. Such other and further relief, as this Court may deem necessary and appropriate.

### DEMAND FOR JURY TRIAL

A jury trial is hereby demanded.

DATED:   July 13, 2016

                                              Respectfully Submitted
                                              Plaintiff SHANNON DESCHENES
                                              By his attorneys,


                                              <u>/s/Jessica D. Hedges</u>
                                              Jessica D. Hedges
                                              BBO No. 645847
                                              Michael Tumposky
                                              BBO No. 660618
                                              Hedges & Tumposky, LLP
                                              50 Congress Street, Suite 600
                                              Boston, MA 02109
                                              T) (617) 722-8220

                     ;